UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | Criminal No. 04-10336-NMG |
| ENRIQUE AGOSTO ) | |
| Defendant ) | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by its attorneys, Michael J. Sullivan, United States Attorney for the District of Massachusetts, and William F. Bloomer, Assistant U.S. Attorney, submits its Sentencing Memorandum with respect to Enrique Agosto ("Agosto").[1]

## INTRODUCTION

*Agosto was a customer of a heroin distribution organization headed by Julio Santiago and located in the Greater Lowell area. He ordered multi-gram quantities of heroin from Santiago over the telephone and via a paging device. Intercepted telephone conversations also revealed that Agosto was a heroin user who tested the quality of heroin for Santiago by ingesting it. On May 5, 2004, Lowell Police detectives stopped Agosto and seized from him a compressed "finger" of heroin weighing 10.14 grams and 600 small plastic "moonwalk" baggies containing 12.67 grams of heroin. Agosto is a career criminal who faces a mandatory minimum term of imprisonment of 10 years. He has pled guilty pursuant to a so-called "C-Plea" with an agreed disposition of between 188 and 235 months' incarceration and an 8-year term of supervised release.*

---

[1] As this Court is aware, following a ten-day trial in October 2006, a jury returned guilty verdicts against five of the eleven codefendants in this case –Julio SANTIAGO, Juan NUNEZ, Carlos COLON (a/k/a Pedro MIRANDA), Jose RODRIGUEZ, and Carlos SANCHEZ -- with respect to Count One of the Superseding Indictment. The jury also found Julio Santiago guilty of the firearms offenses set forth in Count Seven, namely, possession of firearms in furtherance of a drug trafficking crime, and possession of unregistered firearms, to wit: silencers, (Count Eight). The jury further found that the conspiracy as a whole was responsible for more than 1,000 grams of heroin. The remaining seven defendants, including AGOSTO, have pleaded guilty. AGOSTO is the last defendant to be sentenced.

## ANALYSIS

To determine a defendant's sentence, this Court must follow the three-step sentencing approach espoused by the First Circuit. United States v. Dixon, 449 F.3d 194, 204 (1st Cir. 2006); United States v. Jiménez-Beltre, 440 F.3d 514, 518 (1st Cir. 2006) (en banc); United States v. Robinson, 433 F.3d 31, 35 (1st Cir. 2005). First, this Court must calculate the advisory guideline range. E.g., United States v. Pho, 433 F.3d 53, 61 (1st Cir. 2006). Second, the Court must determine whether any traditional departures apply to the case at hand. E.g., United States v. Saez, 444 F.3d 15, 17 (1st Cir. 2006); see also Rita v. United States, 127 S.Ct. 2456 (2007) ("trial court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range."). Finally, the Court needs to determine whether any factors put forth in 18 U.S.C. § 3553(a) offer a persuasive reason to impose a sentence outside of the proposed guideline range. E.g., Robinson, 433 F.3d at 35; see Rita, supra (trial court should consider all of the 3553(a) factors to determine whether they support the sentence requested by a party).

With the elimination of the mandatory status of the sentencing guidelines in United States v. Booker, 543 U.S. 220 (2005), sentences are now reviewed on appeal for "reasonableness" under an abuse-of-discretion standard. See Gall v. United States, 128 S. Ct. 586, 594 (2007) (familiar abuse-of-discretion standard applies to appellate review of sentencing decisions post-Booker); see also Jiménez-Beltre, 440 F.3d at 518 (appellate review of sentence is one of "reasonableness"). But cf. Rita v. United States, 127 S.Ct. 2456, 2463-2467 (2007) (appeals court - not district court - may apply presumption of reasonableness for a properly

calculated within-guidelines-range sentence).[2]

In Gall v. United States, the Supreme Court noted that a district judge must give "serious consideration" to the extent of any departure from the Guidelines and further "must explain his conclusion that an unusually lenient or an unusually harsh sentence is appropriate in a particular case with sufficient justifications." 128 S. Ct. at 594. The Gall Court nevertheless emphasized that the district court "must make an individualized assessment based on the facts presented." Id. at 597. The Court further observed that the sentencing judge was in the best position to evaluate § 3553(a) factors in an individual case; that he or she had greater familiarity with the individual defendant; and that his or her findings should be accorded due deference on appeal. Id. at 597, 600, 602. The court reiterated that appellate courts should not conduct a *de novo* review of district court sentencing decisions. Id. at 598; see also Koon v. United States, 518 U.S. 81, 97 (1996) (rejecting proposition that appellate court *de novo* review of trial court's sentence was necessary to avoid unwarranted disparities).

Against this backdrop, the parties and Probation agree that the defendant is a career offender who is responsible for at least 400 but less than 700 grams of heroin. (Plea Agreement ¶3; PSR ¶¶ 132-133, 141-143). The government further agrees with Probation that a strict application of the career offender provision in light of the statutory maximum alleged in the indictment would result in a Total Offense Level of 34. Nevertheless, the government urges this Court to impose a sentence that effectively results in a three-level departure to a Total Offense Level of 31 for a number of reasons.

---

[2]As a practical matter, with certain limited exceptions set forth in the Plea Agreement neither the government nor the defendant may prosecute an appeal if the Court sentences the defendant to a term of at least 188 but not more than 235 months.

First, the government does not contest that Agosto was a drug user who tested the quality of heroin for Santiago. Intercepted telephone conversations bear this out and the PSR confirms a significant history of substance abuse by Agosto. (PSR ¶¶ 185-191).

Second, although his criminal record clearly is not overstated, the offenses that serve as predicate convictions for career offender purposes occurred more than 10 years before the date of offense charged in the present indictment. In common vernacular, Agosto is "just barely" a career offender.

Third, considering Agosto's role in this conspiracy, a term of imprisonment of not less than 188 months is reasonable when compared to the sentences meted out to his codefendants either following a change of plea or after trial. See 18 U.S.C. § 3553(a)(6) (court must consider the need to avoid unwarranted sentence disparities); United States v. Thurston, 456 F.3d at 216 (discussing Congressional goal of promoting national uniformity in sentencing). For example, three mid-level dealers in this conspiracy – Luis Sanchez, Edwin Torrez, and Zuleima Reyes – received sentences of 30 to 37 months in prison after pleading guilty. Another mid-level dealer – Jose Torrado – received a mandatory minimum of 60 months in prison following a guilty plea. These individuals were more-or-less operating at the same distribution level in the organization as Agosto. Because of his record of prior drug convictions, Agosto will serve more time in prison than the following individuals who played more prominent roles in the conspiracy: Juan Nunez, Santiago's New York-based heroin supplier, was sentenced to 151 months in prison after trial; Carlos Sanchez, a prominent customer of Santiago's who was responsible for more than 1,000 grams of heroin himself, was sentenced to 127 months in prison after trial; Reynaldo Rivera, Santiago's right-hand man who had close to 200 grams of heroin and sophisticated

heroin processing equipment in his apartment when arrested, was sentence to 88 months in prison after pleading guilty; and Pedro Miranda, a close associate of Santiago's who allowed his residence to be used for heroin processing, was sentenced to 72 months after trial.

Indeed, the only defendants who will serve more time in prison than Agosto as a result of this prosecution is Santiago himself, who was sentenced to 248 months after trial for heroin and firearm charges, and Jose Rodriguez, another career offender with a history of drug distribution and violent crimes spanning three decades who opted to go to trial and was sentenced to 264 months in prison. The case against Rodriguez, it should be noted, was stronger from the government's perspective.

That the operative effect of the C-Plea Agreement is a three level reduction in Agosto's Total Offense Level clearly inures to the benefit of the defendant.[3] On the other hand, the government for its part secures a conviction against the defendant for the most serious, readily provable offense without having to marshal some 20-plus witnesses for another one or two-week trial while also obtaining an appeal waiver -- not an insignificant consideration in and of itself. See United States v. Yeje-Cabrera, 430 F.3d 1, 24 (1st Cir. 2005) ("Defendants who plead guilty will receive a benefit in sentencing over those who do not, in both charge bargaining and fact bargaining situations."); see also Bordenkircher v. Hayes, 434 U.S. 357, 365 (1978) ("Plea bargaining flows from 'the mutuality of advantage' to defendants and prosecutors, each with his

---

[3]As a career offender with a Criminal History Category ("CHC") of VI, a Total Offense Level of 34 results in a GSR of 262 to 327 months whereas a Total Offense Level of 31 results in a GSR of 188 to 235 months. Had the defendant not been classified as a career offender, his Total Offense Level would have been 23 after acceptance and his CHC would have been IV, yielding a GSR of 70 to 87 months. This GSR is trumped, however, by the 10-year statutory mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(B)(i).

own reasons for wanting to avoid trial.") (quoting Brady v. United States, 397 U.S. 742, 752 (1970)).

Finally, the government respectfully suggests that a sentence of no less than fifteen and one-half years in prison is "sufficient, but not greater than necessary" to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment, to afford adequate deterrence and to protect the public, and to provide the defendant with needed medical care and correctional treatment.   The government therefore urges this Court to accept the proposed C-Plea.

**C.  Sentence**

For reasons set forth above, the government recommends a term of 188 months' imprisonment to be followed by 8 years' supervised release.[4]  In light of the defendant's criminal history and his involvement in this conspiracy, the government's recommendation is reasonable, United States v. Jiminenez-Beltre, 440 F.3d 514, 518 (1st Cir. 2006)(en banc), and in accord with federal judicial precedent to date interpreting the Sentencing Guidelines and their application.

                                                   RESPECTFULLY SUBMITTED
                                                   MICHAEL J. SULLIVAN
                                                   United States Attorney

                               By:    */s/ William F. Bloomer*
                                    WILLIAM BLOOMER
                                    Assistant U.S. Attorney
                                    BBO#553104
                                    william.bloomer@usdoj.gov
                                    (617) 748-3100

---

[4] Substance abuse evaluation and treatment (with random testing) should be a condition of any term of supervised release.

## CERTIFICATE OF SERVICE

  I, William F. Bloomer, hereby certify February 26, 2008, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non registered participants this date via US Postal Service, postage prepaid.


            */s/William F. Bloomer*
            WILLIAM F. BLOOMER


Date: 26 February 2008