# United States District Court
# District of Massachusetts

ENRIQUE AGOSTO,
     Petitioner,

    v.                       CRIMINAL NO. 04-10336-NMG-05
                              CIVIL ACTION NO. 09-11610-NMG

UNITED STATES OF AMERICA,
     Respondent.

## *REPORT AND RECOMMENDATION ON PETITIONER'S MOTION UNDER TITLE 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN CUSTODY  (#495)*

COLLINGS, U.S.M.J.

### *I. Introduction*

The petitioner Enrique Agosto ("petitioner" or "Agosto") seeks to vacate his conviction pursuant to 28 U.S.C. § 2255.  Agosto pled guilty to heroin-related offenses and was sentenced to 188 months in prison.  He did not appeal his conviction.   In his petition, Agosto raises four ineffective assistance of

counsel claims, including a claim that his trial counsel failed to file a notice of appeal despite Agosto's express instruction that he wished to appeal. The government argues at the threshold that Agosto's petition is untimely, and that the plea agreement contains waivers that preclude Agosto's claims. Alternatively, the government contends that the claims should fail on the merits.

## II. Factual and Procedural Background

Agosto was arrested on October 15, 2004 in connection with his participation in a heroin distribution organization in Massachusetts. (## 8, 21) Agosto signed a plea agreement pursuant to Fed. R. Crim. P. 11(c)(1)(C), in which he agreed to plead guilty to Count I of the Superseding Indictment, charging conspiracy to distribute heroin in violation of 21 U.S.C. §§ 846 and 841(a)(1). (*See* # 448) In the plea agreement, Agosto stipulated to possessing at least 400 grams but less than 700 grams of heroin, and he agreed that the base offense level was 28. (*Id.* at 2) Further, Agosto stipulated that he was a career offender and that therefore his career offender offense level was 34 with a criminal history category of VI. (*Id.*) With a reduction for acceptance of responsibility, his base offense level was 31 which yielded a guidelines sentencing range of 188 to 235 months. At the change of plea hearing, the

government stated that it would recommend a sentence at the low end of the range. (*See* #573, Transcript of Plea at 7)  Agosto also agreed to waive his right to file a direct appeal or to challenge collaterally his guilty plea or the imposition of the sentence agreed to by the parties.  (#448 at 4)

At the change of plea hearing conducted on December 6, 2007, the district court reviewed the terms of the plea agreement (*see* # 573 at 5-6), and twice inquired whether anyone had made any promises or assurances to Agosto in an effort to make him plead guilty, (*id.* at 6, 8-9).  Agosto replied, "no." (*Id.* at 6, 9)  The district court inquired whether Agosto understood that "for all practical purposes, by virtue of the plea agreement, you have waived your right to appeal any sentence?"  Agosto replied, "Yes, I do." (*Id.* at 11)  The government presented a summary of the evidence it would present if the case proceeded to trial, and Agosto agreed with the summary of the facts.  The district court detailed the rights that Agosto would be relinquishing in pleading guilty, and found that Agosta was fully competent and capable of entering an informed plea and that his plea of guilty was knowing and voluntary. (*Id.* at 11-12, 16)

At sentencing on March 6, 2008, the district court observed that "the

guidelines range would have been 262 to 327 months but for the fact that counsel have entered into a binding plea agreement wherein they both mistakenly understood the guidelines range to yield a range of 188 to . . . 235 months[.]" (#505, Transcript of Disposition) Despite the miscalculation, the district court accepted the plea and sentenced Agosto to 188 months, the low end of the guideline range.

On September 25, 2009, Agosto filed a Motion Under Title 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (#495), challenging his conviction and sentence on four grounds: 1) that trial counsel was ineffective in failing to file a notice of appeal; 2) that trial counsel was ineffective in failing to move for a downward departure at sentencing based on the argument that the career offender designation overstated the seriousness of Agosto's criminal history; 3) that trial counsel was ineffective in advising Agosto to accept the plea deal and telling Agosto that if he went to trial he would be sentenced to life in prison; 4) that trial counsel was ineffective in failing at sentencing to seek an adjustment for Agosto's minor role in the offense. (*See* #495 at 6-8, 12-13) On October 23, 2009, the government filed its Response to Defendant's Motion Pursuant to 28 U.S.C. § 2255 and Request

for Summary Dismissal (#502), and subsequently a Supplemental Response to Defendant's Motion Pursuant to 28 U.S.C. § 2255 (#508). On November 13, 2009, Agosto filed a Reply Brief in Support [of] Petitioner's Motion to Vacate, Set Aside or Correct a Sentence Pursuant to 28 U.S.C. §[] 2255 (#509), along with an Affidavit. On December 11, 2009, Agosto filed a Reply Brief to Government's Supplemental Response to Defendant's Motion Pursuant to 28 U.S.C. §[] 2255 (#512).

### III. Discussion

The government has moved to dismiss the petition summarily on the grounds that it is untimely; that the waivers contained in the plea agreement preclude habeas relief; and that the claims, in any event, are without merit. The Court considers these arguments *seriatim*.

### A. The Timeliness of the Habeas Petition

AEDPA provides for a one-year limitations period. Generally, a section 2255 petition must be filed within one year of "the date on which the judgment of conviction becomes final." 28 U.S.C. § 2255(f)(1). Where no notice of appeal was filed, as here, the triggering event for statute of limitations purposes is the expiration of the time for filing an appeal. *See* Randy Hertz & James S.

Liebman, 1 *Federal Habeas Corpus Practice and Procedure*, § 5.2[b][I], at 272 (6th ed. 2011).[1] The district court sentenced Agosto on March 6, 2008, and entered judgment on April 3, 2008. (*See* #455, Judgment) Under the Federal Rules extant at the time relevant here, a direct appeal should have been filed within ten days after the entry of judgment. And so, Agosto's conviction became final, at the latest, on April 17, 2008, and the one-year limitations period expired one year later, on April 17, 2009. Agosto filed his section 2255 petition on September 25, 2009, slightly more than five months after the one-year limitations period expired. Agosto does not dispute this calculation. Instead, he argues that his late filing should be excused under equitable tolling principles. Alternatively, although Agosto has not argued the point, the Court considers whether the petition may yet be timely under 28 U.S.C. § 2255(f)(4).

### 1. *Equitable Tolling*

"[T]he timeliness provision in the federal habeas corpus statute [28 U.S.C. § 2244(d)] is subject to equitable tolling." *Holland v. Florida*, 130 S. Ct. 2549,

---

[1]

During the time frame at issue here, the time for filing an appeal expired ten days after the judgment is entered. A judgment is "entered" "when it is entered on the criminal docket." Fed. R. App. P. 4(b)(6). In this case, the judgment was entered on April 3, 2008. Using the method of calculation extant at the time, Agosto had until April 17, 2008 to file a notice of appeal.

2554 (2010); *see also Ramos-Martínez v. United States*, 638 F.3d 315, 322 (1st Cir. 2011) (extending *Holland* to 28 U.S.C. § 2255(f)). Nevertheless, "equitable tolling should be invoked only sparingly." *Ramos-Martínez*, 638 F.3d at 322 (internal quotation marks and citations omitted). "A habeas petitioner bears the burden of establishing the basis for equitable tolling," *id.* at 323 (internal quotation marks and citation omitted), and must show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing,'" *id.* (quoting *Holland*, 130 S. Ct. at 2562 (further internal quotation marks and citation omitted)). Moreover, "[a] party seeking equitable tolling must have diligently pursued his rights for the entire period he seeks tolled, not merely once he discovers the underlying circumstances warranting tolling." *Neves v. Holder*, 613 F.3d 30, 36 (1st Cir. 2010), *cert. denied,* 131 S. Ct. 3025 (2011).

In his affidavit, Agosto avers that "[a]t sentencing, in open court[,] [he] told the court that [he] did not want to appeal [his] sentence." (#509-2 at 1) He further avers that after sentencing, he met with his counsel in a holding cell, where his counsel explained his appeal rights. (*Id.*) Agosto states that he told his counsel to appeal his sentence, and that his counsel stated that he would file

a notice of appeal when he got back to his office. (*Id.*) Agosto further maintains that in April 2008, he wrote his attorney a letter asking about the status of his appeal. (*Id.*) He avers that he received no response to this letter, and that he wrote additional letters to his counsel again in August and November 2008, but those letters also went unanswered. (*Id.*) He then states that he "got fed up," and called his counsel's law offices in November and December of 2008, but was always told that his counsel was "unavailable." (*Id.*) He then waited until March 2009, when he again wrote his counsel inquiring about the status of his appeal; he states that this letter also went unanswered. (*Id.*) Finally, he avers that "a few months ago" (the Court assumes roughly August 2009), he wrote a final letter to his counsel requesting return of his files, and he was informed that his trial counsel had died of cancer in March 2009. (*Id.*)

Agosto argues that his attorney's failure to file a direct appeal prevented petitioner from filing a timely section 2255 petition. (*See* #509 at 2) Although Agosta does not flesh out this argument, the Court assumes that Agosto's argument runs as follows: his late filing should be excused because he thought that his counsel had filed a notice of direct appeal on his behalf, and that his

appeal had been pending during the 17 months before he had filed his section 2255 petition. (*See* #495 at 6) Thus, Agosto's argument seems to go, he was unaware that the clock had begun ticking on his federal habeas petition until he learned that his attorney had passed away a few weeks before he filed his habeas petition.

In the Court's view, the facts that Agosto recounts, even if true,[2] do not establish reasonable diligence sufficient to warrant equitable tolling. The petitioner essentially contends that he had no contact with his counsel during the year that he thought that his direct appeal was pending, and that he received no response from counsel to the letters that he wrote during the months after his counsel had allegedly filed a notice of appeal. Petitioner should have and could have taken some other affirmative action to protect his rights, such as by requesting a copy of the docket from the court, or seeking some other assistance from the court in order to ascertain the status of his appeal. Instead, the petitioner contends that he waited a period of months and then wrote again. It was not reasonable for petitioner to assume that nothing

_____

[2]

In the Court's view, it is inherently incredible that Agosto would have waived his appeal rights at the end of the sentencing hearing, only to express a change of heart immediately afterwards. This is especially so because his attorney must have also explained the implications of the appeal waiver. Agosto does not detail what his counsel said to him that could have led him to change his mind. Nevertheless, for the reasons set out below, the Court does not rest resolution of the petition on this conclusion alone.

was awry when his attorney, according to Agosto, failed to respond. Nor was it reasonable for Agosto to assume that counsel was, in fact, pursuing an appeal several months beyond the date on which the notice should have been filed, when his counsel failed to contact him with details about the appeal. In short, Agosto should have known that something was amiss during the one-year limitations period, and the actions he recounts, even if true, do not bespeak reasonable diligence. *Cf. Williams v. United States*, No. 10-22897, 2011 WL 1878124, at *2 (S.D. Fla. Apr. 25, 2011) ("Indeed, the absence of any response from counsel (as movant alleges) would have put a reasonable prisoner on notice that some other steps should be taken to determine the status of his appeal."), *report and recommendation adopted*, 2011 WL 1878126 (S.D. Fla. May 17, 2011). The situation might be different if his attorney had responded and had represented that an appeal was in the works, lulling the petitioner into inaction. But here Agosto alleges that he heard nothing from his attorney, and this averment effectively dooms his argument.

  2. *Timeliness under 28 U.S.C. § 2255(f)(4)*

Although Agosto has not argued the point, his claims (assuming, favorably to Agosto, that all the claims asserted could benefit from this provision) may yet

be timely under 28 U.S.C. § 2255(f)(4), which triggers the running of the statute of limitations on "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." Under this provision, then, a section 2255 motion might be timely if the petitioner filed within one year of discovering, through the exercise of due diligence, that counsel did not file the requested appeal. Thus, the task "'is to determine when a duly diligent person in petitioner's circumstances would have discovered that no appeal had been filed.'" *Anjulo-Lopez v. United States*, 541 F.3d 814, 818 (8th Cir. 2008) (quoting *Wims v. United States*, 225 F.3d 186, 190 (2d Cir. 2000)). This provision presents a closer question because due diligence would not have required Agosto to inquire about his counsel's pursuit of an appeal in April 2008, the very day on which his conviction became final absent appeal, and the statute of limitations would not have begun to run until sometime after that day. *See Wims*, 225 F.3d at 190. Here, Agosto avers that he wrote his attorney in April, August and November of 2008, never receiving a response. One might readily conclude that Agosto could have learned the status of his appeal by taking affirmative action after his attorney failed to respond not once but twice to his letters. Thus, based on Agosto's own

averments, after Agosto sent the first letter in April 2008 with no response, reasonable diligence would have required Agosto to make further inquiry during the lapse of four months before he took any additional action. *Cf. Williams*, 2011 WL 1878124, at *2 ("due diligence requires that once [petitioner's] first purported letter to counsel went unanswered, that he have requested a copy of his criminal docket.").

Even so, determining when a petitioner should have discovered that his counsel failed to file a notice of appeal is fact-specific and "depends, among other things, on the details of [his] post-sentence conversation with his lawyer and on the conditions of his confinement." *Wims*, 225 F.3d at 190-91. Resolution of the issue here is additionally complicated because Agosto's trial counsel passed away in March 2009. And courts have reached very different results in resolving this precise issue. Compare *Anjulo-Lopez*, 541 F.3d at 818 (concluding that defendant failed to exercise due diligence in failing to discover counsel had not filed appeal "at any time after the deadline for filing the appeal passed"), with *Wims,* 225 F.3d at 191 (concluding that "five-month delay" before petitioner discovered that his counsel had failed to file a direct appeal "is not so clearly unreasonable that it plainly appears from the face of appellant's petition

and supporting papers that he is barred from habeas relief"). Because the Court cannot say that the record conclusively establishes that Agosto should have discovered his counsel's alleged lapse during the five-month period after the time for filing a notice of appeal, the Court instead considers the government's alternative arguments.

## B. The Effect of the Plea Agreement Waivers

The government also makes the threshold argument that Agosto's claims are barred by the waiver provision contained in the plea agreement, which states as follows:

> 6. <u>Waiver of Rights to Appeal and to Bring Collateral Challenge</u>
> Defendant is aware that he has the right to challenge his sentence and guilty plea on direct appeal. Defendant is also aware that he may, in some circumstances, be able to argue that his plea should be set aside, or his sentence set aside or reduced, in a collateral challenge (such as pursuant to a motion under 28 U.S.C. § 2255).
> In consideration of the concessions made by the U.S. Attorney in this Agreement, Defendant knowingly and voluntarily waives his right to appeal or collaterally challenge:
> (1) Defendant's guilty plea and any other aspect of Defendant's conviction, including but not limited to, any rulings on pretrial suppression motions or any other pretrial dispositions of motions and issues; and
> (2) The imposition by the District Court of the sentence agreed to by the parties, as set out in paragraph 4, even

> if the Court rejects one or more positions advocated by
> the parties with regard to the application of the U.S.
> Sentencing Guidelines.

#448, Plea Agreement at 4.

There are a few problems with the government's argument. Agosto raises a claim in his petition that his counsel was ineffective during the plea bargaining process. The weight of authority holds that "waivers of appeal remain valid unless the ineffective assistance directly related to the knowing, voluntary nature of the waiver." *United States v. White*, 307 F.3d 336, 341 (5th Cir. 2002) (discussing cases). And the First Circuit has noted that even if a waiver is found to be knowing and voluntary, a claim that the plea proceedings themselves were infected by constitutionally deficient assistance of counsel could fall within "the miscarriage of justice exception" that would permit a court to decline to enforce a waiver. *See United States v. Teeter*, 257 F.3d 14, 25 n.9 (1st Cir. 2001). The same holds true for waivers of collateral-review rights: although such waivers are generally enforceable if knowing and voluntary, a wealth of authority holds that "[a] defendant's plea agreement waiver of the right to seek section 2255 post-conviction relief does not waive defendant's right to argue, pursuant to that section, that the decision to enter into the plea was

not knowing and voluntary because it was the result of ineffective assistance of counsel." *DeRoo v. United States*, 223 F.3d 919, 924 (8th Cir. 2000) (collecting cases).

Because Agosto correctly notes that he has raised a claim asserting that his counsel was ineffective during the plea-bargaining process, the Court concludes that the proper course is to examine the merits of that argument, and then to assess the enforceability of the waivers and their effect on the remaining claims.

## C. The Merits of the Claims

Agosto asserts four substantive claims in his habeas petition, all alleging that his counsel rendered constitutionally inadequate representation. He contends that: 1) trial counsel was ineffective in failing to file a requested notice of appeal; 2) trial counsel was ineffective in failing to argue at sentencing that Agosto's career offender designation overstated the seriousness of his criminal history; 3) trial counsel was ineffective in advising Agosto that he would receive a life sentence if he proceeded to trial; 4) trial counsel was ineffective in failing to move for a sentencing adjustment to reflect Agosto's minor role in the offense.

The ineffective assistance of counsel claims are governed by the standard set out in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), "which requires proof both that counsel fell below minimum standards of representation and that there is a reasonable probability that the deficiency altered the outcome of the case." *Robidoux v. O'Brien*, 643 F.3d 334, 338 (1st Cir.), *cert. denied sub nom., Robidoux v. Murphy*, 132 S. Ct. 866 (2011). The Sixth Amendment right to counsel "extends to the plea-bargaining process." *Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012). And "the same two-part standard . . . appli[es] to ineffective-assistance claims arising out of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). In the context of guilty pleas, where the defendant "enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Id.* at 56 (quoting *McMann v. Richardson,* 397 U.S. 759, 771 (1970)). The prejudice requirement "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have

insisted on going to trial." *Id.* at 59 (footnote omitted). Under *Strickland*, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

1. *Ineffectiveness of counsel during the plea process*

In Ground 3 of his petition, Agosto alleges that his trial counsel was ineffective during the plea process because his counsel advised Agosto that if he proceeded to trial he would receive a life sentence. Agosto claims that he would have risked going to trial if his counsel had properly explained the guidelines sentencing range to which he would have been exposed. Agosto avers:

> Attorney McCann told me during the plea negotiations that if I went to trial, I would receive a sentence of LIFE in prison period. He told me that the Judge I was in front of love[d] giving life sentences and never goes below the advisory guidelines ranges. Attorney McCann told me not to go to trial or I would get LIFE in prison. Attorney McCann never discussed what my advisory guideline range would be if I did go to trial, had I known the Guideline range, I would have gone to trial.

(#509-2 at 2-3)

Thus, he contends that if he had known that the guideline sentencing range would have been 235 to 293 months, he would have insisted on going to trial.

(#495 at 12)[3]

First, the Court notes that counsel would not have been incorrect in advising Agosto that the maximum penalty at stake in this case was life in prison, as that was the case. (*See* #573 at 9) Agosto effectively alleges, however, that his counsel assured him that he would receive a life sentence if he went to trial. But even accepting, as the Court must, that Agosto's behind-the-scenes representation is true, and assuming that his counsel's statement to him satisfies the performance prong of *Strickland*, Agosto has failed to establish that but for counsel's purported error in incorrectly advising him, there is a reasonable probability that Agosto would not have entered into the plea agreement and would have insisted on going to trial. A review of the record makes this clear.

The government's proffered evidence at the plea colloquy included the following: Agosto was arrested with over 22 grams of heroin on his person. (#573 at 13) The government also offered details through Title III wiretap evidence and pager intercepts that Agosto would have been held accountable for 598 grams of heroin. (*See id.* at 14-15) In his petition, Agosto has offered

---

[3] In fact, the properly calculated guidelines range was 262 to 327 months (*see* #505 at 9), but the detail has no effect on the analysis.

no contrary version of facts, or any defense that would suggest a reasonable probability that he would have risked trial in the face of this evidence.

In pleading guilty, Agosto received not only the benefit of a three-point reduction in his total offense level, but also the benefit of a sentence that was miscalculated in his favor. The properly calculated guidelines range would have been 262 to 327 months. The plea agreement recommended an incorrect guideline range of 188 to 235 months, and the government recommended the bottom of this range. (*See* #454 Government's Sentencing Memorandum at 4; *see* #573 at 7) Thus, on the record before the Court and in the absence of any countervailing argument, the Court concludes that Agosto has failed to establish that he would not have pled guilty but for his counsel's misrepresentation.

A review of the plea colloquy further undercuts Agosto's claim. After the government detailed the sentence contemplated in the plea agreement, the district court asked Agosto whether anyone had "made any other or different promise or assurance to you of any kind in an effort to make you plead guilty in this case?" (#573 at 6) Agosto replied "no." (*Id.*) In this context, Agosto's counsel disclosed to the court that he told Agosto that he was "experienced with this Court," and that "that this Court is conservative in nature but is very open-

minded about various issues that may come up as it relates to sentencing." (*Id.* at 8)  On the heels of this disclosure, the district court again inquired: "[J]ust so the record is clear, I'll ask Mr. Agosto again.  Has anyone made any other or different promise or assurance, from anything you've heard here this afternoon, in an effort to make you plead guilty in this case?"  (#573 at 8-9)  Again, Agosto responded "no." (*Id.* at 9)  The colloquy continued, with the court inquiring "[h]as anyone attempted in any way to force you to plead guilty in this case." (#573 at 9)  Agosto again responded "no." (*Id.)*  Agosto may have interjected at this point, but he did not.  "[A] court is entitled to give weight to the defendant's statements at his change-of-plea colloquy absent a good reason for disregarding them." *United States v. Santiago Miranda*, 654 F.3d 130, 138 (1st Cir. 2011) (internal quotation marks and citation omitted).  "Moreover, a defendant's 'declarations in open court carry a strong presumption of verity.'" *Id.* (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)).  Agosto has not overcome that presumption.

Finally, the district court made plain that it was not bound by the sentence proposed in the plea agreement, and that it had "the discretion to sentence [Agosto] anywhere in the range set forth in the statute . . . and that [it

was] not required to sentence [him] within the range prescribed in the sentencing guidelines or based upon factors contained in those guidelines." (#573 at 10) When queried whether he understood, Agosto replied, "Yes." (*Id.*) The district court further advised Agosto that it could "impose a sentence that is more severe or less severe than those called for in the guidelines" and then asked: "Do you understand that?" (*Id.* at 10-11) Again, Agosto stated that he did. Thus, Agosto was fully apprised that, despite the plea agreement, the district court could have imposed a more severe sentence, and he persisted in his guilty plea nonetheless. The plea colloquy thus undercuts Agosto's contention that, but for his counsel's purported representations, he would not have pled guilty.

2. *The effect of the waivers on the remaining claims*

Having rejected any argument that Agosto's plea was not knowing or involuntary on account of ineffective assistance of counsel, the court returns to the question of the effectiveness of the waivers. An appeal waiver is presumptively enforceable if it is entered into knowingly and voluntarily. *See Teeter*, 257 F.3d at 24. A three-pronged test applies to determine knowledge and volition: "First, the written plea agreement must clearly set forth the scope

and terms of the waiver. Second, the district court, at the change-of-plea hearing, must call the waiver to the defendant's attention and question him closely in order to ensure that he has a full understanding of the waiver provisions and that he has knowingly and voluntarily elected to waive his right of appeal. Third, even if the plea agreement and the change-of-plea colloquy pass muster, we will not enforce the waiver if doing so would work a miscarriage of justice." *United States v. Gil-Quezada*, 445 F.3d 33, 36 (1st Cir. 2006) (citations omitted).

Here, the plea agreement meets the first prong: the agreement clearly and unambiguously provides that the defendant voluntarily and knowingly waives his right to appeal and to collaterally challenge "his guilty plea and any other aspect of his conviction" and "imposition by the District Court of the sentence agreed to by the parties, as set out in paragraph 4." The sentence imposed falls squarely within the scope of this waiver. *Cf. Sotirion v. United States*, 617 F.3d 27, 34 (1st Cir. 2010) (examining similar language in plea agreement). The district court specifically called attention to the waiver of appeal rights. The district court inquired: "Do you understand that under some circumstances the government may appeal any sentence that I impose, but for all practical

purposes, by virtue of the plea agreement, you have waived your right to appeal any sentence; do you understand that?" (#573 at 11) Agosto responded, "Yes, I do." (*Id.*) And although the district court did not specifically inquire into the waiver of collateral review rights, the First Circuit has stated that "[a]lthough it would have been preferable for the . . . judge to specifically refer to the waiver of the right to collateral challenge as well as the waiver of the right to direct appeal, the judge's inquiry adequately confirmed [the defendant's] understanding that he was giving up the important right to challenge his sentence after conviction." *Sotirion*, 617 F.3d at 35. *Cf. also United States v. Ciampi*, 419 F.3d 20, 26-27 (1ˢᵗ Cir. 2005) (enforcing waiver of appellate and collateral-review rights despite court's failure to make specific inquiry where totality of the circumstances make plain that defendant understood the nature and scope of the waiver), *cert. denied*, 547 U.S. 1217 (2006). Finally, the Court concludes that it would not constitute a miscarriage of justice to enforce the waiver in this case. "The miscarriage of justice standard 'requires a strong showing of innocence, unfairness, or the like, and is 'demanding enough to prevent defendants who have agreed to waive their right to appeal from successfully pursuing garden-variety claims of error.'" *Sotirion*, 617 F.3d at 36

(internal quotation marks and citation omitted).  Here, the defendant received the benefit of his bargain, which included a miscalculated sentence that inured to his benefit.

a.  <u>Claims of ineffectiveness at sentencing</u>

Because the Court concludes that the waivers ought to be enforced, the Court also concludes that two of the grounds presented in Agosto's petition necessarily fail: his claims in Ground 2 and 4 that his counsel was ineffective at sentencing in failing to move for an adjustment for Agosto's minor role in the offense, and in failing to challenge Agosto's career offender designation.  These represent garden-variety challenges to Agosto's sentence, and they are plainly precluded by the waivers.  Furthermore, Agosto's counsel would not have been ineffective in failing to raise these challenges at sentencing, as such a challenge could have voided the plea agreement.

b.  Failure to file notice of appeal

Finally, Agosto contends that his trial counsel was ineffective in failing to file a notice of appeal, despite Agosto's request that he do so.  Ordinarily, under the standard established in *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000), "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable."  *Id.* at 477. *Flores-Ortega* further establishes that, under such circumstances, a defendant need not establish prejudice:  "by instructing counsel to perfect an appeal, [a defendant] objectively indicated his intent to appeal and was entitled to a new appeal without any further showing."  *Id*. at 485.  Agosto seeks to situate his claim in this category.

*Flores-Ortega* did not address the circumstances in which a defendant has expressly waived appeal rights in a plea agreement.  *See Flores-Ortega*, 528 U.S. at 488 n.1 (Souter, J., concurring in part, dissenting in part) ("there is no claim here that Flores-Ortega waived his right to appeal as part of his plea agreement").  *See also United States v. Mabry*, 536 F.3d 231, 240 (3rd Cir. 2008) (noting that *Flores-Ortega* did not address whether presumption of prejudice applies or whether *Flores-Ortega* controls, "where the defendant has *waived* his

right to appellate and collateral review"), *cert. denied*, 129 S. Ct. 2789 (2009). The law, however, has evolved on this point following *Flores-Ortega*, and the circuits are currently split on whether *Flores-Ortega* obliges trial counsel to file a notice of appeal if asked to do so when the defendant has entered into a plea agreement waiving appeal rights. *See United States v. Falcon*, No. 07-147-ML, 2011 WL 777852, at *5 (D.R.I. Feb. 28, 2011) (collecting cases).[4] Thus far, the First Circuit has not had occasion to address the question.

Under the majority view, *Flores-Ortega* controls even in circumstances in which a defendant has waived the right to appeal. Under this view, if a defendant, despite the waiver, requests counsel to file an appeal, counsel must oblige by filing a notice of appeal and then an *Anders* brief if counsel believes that the waiver would render an appeal frivolous. *See, e.g., Campusano v. United States*, 442 F.3d 770, 773, 777 (2d Cir. 2006) (Sotomayor, J.) (concluding that the "*Flores-Ortega* presumption of prejudice applies to a defendant who has waived appeal in a plea agreement" and that counsel must

---

[4] Compare *United States v. Poindexter*, 492 F.3d 263, 273 (4th Cir. 2007); *United States v. Tapp*, 491 F.3d 263, 266 (5th Cir. 2007); *Watson v. United States*, 493 F.3d 960, 964 (8th Cir. 2007); *Campusano v. United States*, 442 F.3d 770, 777 (2d Cir. 2006); *United States v. Sandoval–Lopez*, 409 F.3d 1193, 1197 (9th Cir. 2005); *United States v. Garrett*, 402 F.3d 1262, 1266–67 (10th Cir. 2005); *Gomez–Diaz v. United States*, 433 F.3d 788, 790 (11th Cir. 2005), with *United States v. Mabry*, 536 F.3d 231 (3rd Cir. 2008); *Nunez v. United States*, 546 F.3d 450 (7th Cir. 2008).

discharge obligations under *Anders v. California*, 386 U.S. 738 (1967)). Under the minority view, the majority rule applies *Flores-Ortega* "to a situation in which it simply does not 'fit.'" *Mabry*, 536 F.3d at 241. Under this view, the validity of the waiver ought to be the threshold issue when a petitioner claims, despite waiving appeal rights, that counsel was ineffective in failing to file a notice of appeal. *Id.* at 242. And, "[o]nce a defendant has waived his right to appeal not only in writing but also in open court under Rule 11(b)(1)(N), the sixth amendment does not require counsel to disregard the waiver. The regimen of *Strickland* applies: the defendant must show both objectively deficient performance and prejudice. Unless a non-frivolous issue could be raised on appeal, counsel should protect the client's interest in retaining the benefit of the plea bargain." *Nunez v. United States*, 546 F.3d 450, 456 (7th Cir. 2008).

In the Court's judgment, the minority view is persuasive. As the Seventh Circuit noted in *Nunez*, "[w]aivers are enforced even if a defendant changes his mind. . . . Instead of being obliged to follow his client's (latest) wishes, however unreasonable they may be, a lawyer has a duty to the judiciary to avoid frivolous litigation . . . . A lawyer also has a duty to his client to avoid

taking steps that will cost the client the benefit of the plea bargain." *Nunez*, 546 F.3d at 454-55. A number of district courts have since adopted this approach. *See, e.g., Falcon*, 2011 WL 777852, at *7 ("the presumption of prejudice espoused in *Flores-Ortega* does not apply to Falcon's ineffective assistance claim . . ., given the full and complete colloquy conducted by [the court] and the appeal waiver provision signed by [the defendant]"); *Blacksher v. United States*, No. 11-cv-11826, 2011 WL 5854373, at *4 (E.D. Mich. Oct. 13, 2011) (approving minority view and concluding that defendant's "unfulfilled request for counsel to file a direct appeal should not preclude enforcement of [defendant's] direct appeal waiver"), *report and recommendation adopted,* 2011 WL 5854341 (E.D. Mich. Nov. 18, 2011); *United States v. Walls*, No. 05-92, 2008 WL 927926, at *8 (E.D. Ky. April 4, 2008) (noting weight of authority but holding that "a complete waiver of appeal rights removes [the] case from the scope of *Flores-Ortega*" and, alternatively, holding that "the presumption of prejudice in *Flores-Ortega* is rebutted in this case by the existence of a valid waiver of appeal rights").

Here, having concluded that the waivers contained in the plea agreement are enforceable, and having rejected as meritless Agosto's claim that the plea

process was tainted by ineffectiveness of counsel, the Court shall recommend that Agosto's claim that his counsel was ineffective in failing to file a notice of appeal be denied, especially where the issues presented are squarely precluded by the waivers.

## IV. Conclusion, and Recommendation and Alternative Recommendation

For all the above reasons, I RECOMMEND that petitioner's Motion Under Title 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (#495) be DENIED. However, should the District Judge adopt the majority view that if a defendant, despite the waiver, requests counsel to file an appeal, counsel must oblige by filing a notice of appeal, I ALTERNATIVELY RECOMMEND that the District Judge appoint counsel pursuant to Rule 8(c) of the Rules Governing Section 2255 Proceedings, and conduct an evidentiary hearing on the question whether Agosto, in fact, specifically requested his trial counsel to file a notice of appeal.

## V. Review by the District Judge

The parties are hereby advised that any party who objects to this recommendation and alternate recommendation must file specific written objections thereto with the Clerk of this Court within 14 days of the party's

receipt of this Report and Recommendation. The written objections must specifically identify the portion of the recommendations, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply to file objections shall preclude further appellate review. *See Keating v. Secretary of Health and Human Services*, 848 F.2d 271 (1st Cir. 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603(1st Cir., 1980); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

*/s/ Robert B. Collings*

ROBERT B. COLLINGS
United States Magistrate Judge

May 11, 2012.